23-1832 Conservation Law Foundation v. Academy Express Council? Good morning. Heather Govern on behalf of the Appellant Conservation Law Foundation. I'd like to save three minutes for rebuttal. Yes, you may. May it please the Court. This appeal addresses the standing of an environmental citizen plaintiff and its members. Here, CLF's members are out in their community. Several are literally standing within a few hundred feet of the defendant's illegal bus pollution. Mr. Wagner, for example, has chronic respiratory issues. He has severe allergies that are worsened by diesel and vehicle exhaust. When you say several are standing within several hundred feet, are you referring to Wagner and one other? No, Your Honor. There are a number of witnesses that are within hundreds of feet from different bus stops. Take your first ten. Sure. Which ones would you say allege enough to get within several hundred feet? Absolutely. The individuals that are within several hundred feet are Mary Andrews, also Thomas Cahill, Robert Kendall, Miss Lye, Sophia Lye, Tommaso Wagner, which we just spoke about, Stacy Rubin, and Peter Shelly, who's less than one mile away. What's important about... So I thought we were talking about several hundred feet. Yes. Does that include Rubin? So the last person I just mentioned was Mr. Shelly, who is, he's probably around a half a mile. But what's important is not just the distances from the bus stops. It's important that these individuals have experienced an injury from vehicle exhaust, and it does not necessarily have to be at those bus stops. What's important is that these facts... How far are you pressing that? Let's assume one of the plaintiffs said, I reside in San Francisco. I don't like bus exhaust. It hurts me. And I understand these buses are idling at the Alewife bus stop in Massachusetts. Would that person have standing? If that person could not show that they have a personal stake in the issue at the bus stop, no. They would not be able to... They would not have standing in this case. They would need to show a geographic... They are in the geographic vicinity. Right. And when we talk about the geographic vicinity, what's our metric? Our metric must mean some reasonable probability that they'd be exposed to the exhaust or the pollutants coming out of that bus. Right. Across the circuits, a person within miles of an illegal pollution source can demonstrate his personal stake in addressing the contribution of that pollution to his injury. So geographic vicinity standards across the country, that standard's been applied at the Second Circuit where we talk about in the New York Perg case that the individuals are within a few miles. There's the Sierra Club v. Franklin County power case where another Clean Air Act case, that's the Seventh Circuit, a three-mile distance. So you're saying that it's plausible that a person three miles away from an idling bus would be exposed to the pollutants from that bus? That is possible, Your Honor. But we don't have to get to that question here since we have so many of CLF's witnesses that are well within that range. But do you have witnesses who, for example, let's say somebody, every morning I jog by the bus station and when I'm there the buses are idling. Do you have any persons like that? Oh, absolutely, Your Honor. There are individuals who are... Can you point out, give us one or two examples? Of course, of course. What's important to note in this case are the witnesses who are using the commuter stations where these buses are. So I'm just going to point out four members who have specific injuries near each of those bus stops. So we have Mr. Wagner, who I've mentioned. He uses both the Alewife stop, he uses the Newton stop as well. Ms. Andrews, her injuries are traceable to the Aganis stop. Ms. Becker's are traceable to the Bridgeport stop. And then Ms. Dimmock's are traceable to the Braintree lot. These are individuals who are either traveling to see family members. Sometimes they're not just commuting, but they're biking, they're going out for a jog, and they're close enough to the defendant's air pollution to demonstrate that they... How close? Within 100 feet or so are they going to go very close? Yes, definitely. And that's why in our briefs, Your Honor, we tried to specify instead of forcing the court to have to read through the paragraphs of the declarations or to go through the testimony from the deposition transcripts for three of the witnesses, we wanted to point out how close in feet many of these individuals are. And you mentioned four, so with those four, you should have sufficient, in your view, to have the standing, correct? Yes, and I wanted to point out those four because those provide the standing for all the bus stops in this case. And if the court isn't convinced that those specific individuals are adequately close or are adequately injured, there are other individuals, which is why we included many different members in this case who are affected by the pollution. We have Mr. Kendall. He's 65 years old. He suffers from severe allergies, sleep apnea. He's 200 feet from the Wellington station. Ms. Lee, who I mentioned earlier, she's within 400 feet of the Newton station as well. But what I wanted to get to quickly is just... I'm sorry, Counsel. Sorry. How many plaintiffs do you have at the Bridgeport stop? At the Bridgeport stop, we have... Of the original ten. Of the original ten, we have one. That's Ms. Becker. Okay. And Becker says she's .75 miles. Ms. Becker, who you mentioned? Yes. She's also... You listed her as within several hundred feet. And I'll just say that not every member, the majority of the bus stops, we have individuals who are within several hundred feet. But even... You gave us the list of those within several hundred feet, and I thought Ms. Becker was one you said. Ms. Becker was one of the individuals that I would advise this court to review her declaration simply because she is the only one that we have at the Bridgeport lot or who is within a close proximity and falls within the geographic vicinity that most courts have accepted as the radius. And that is .75 miles. Well, it's under a few miles, actually, Your Honor. There's no courts that have actually said we were trying to provide the information in feet just so everyone could understand how close these individuals are, that they are literally standing at the locations of where the buses are. But the standard actually goes well beyond hundreds of feet. There's no standard in the statute. There's got to be some causal connection. That's correct. We know in an extreme case that San Francisco is too far because our common sense tells us it doesn't. And we know in an extreme case that two feet is certainly plenty close enough. How do we, without any expert testimony, how do we say that it's plausible that a bus three-quarters of a mile away would affect someone in any conceivable way? Don't we need some expert testimony? No, Your Honor. This is the brilliance of the traceability standard that has been applied across the country in these cases, and especially in air pollution cases, that you meet the traceability standard when the person experienced an air pollution injury in the geographic vicinity of the defendant's location. But that begs the question, what's the geographic vicinity? We know it's not San Francisco. We know it's two feet. Where do we draw the line in terms of defining the vicinity? We need some help because I didn't take a course in law school that covered how far bus pollutants go. Usually the district courts and the circuit courts have just taken judicial notice of the fact that air pollution travels. And the cases that I mentioned earlier... How far? I'm sorry? How far? The pollution, there's expert witness testimony on the record that particulate matter 2.5 can travel hundreds of miles. There's other pollutants that travel as well, and air pollution in general is known to travel beyond the exact source. Okay, which expert is this? Dr. Durant, Your Honor. But I do want to mention that one issue related to the district court's decision here is the standard does much more demanding standard that was set. The court committed a reversible error by setting a standard, one that leans towards tort law, leans towards proximate causation. On page 17 of the district court's decision, they asked for needing a direct causal connection, and that is not what is needed here. As this court stated in Webb, proximate causation is not a requirement of Article III standing. A plaintiff's injury need only be fairly traceable to the defendant's conduct, and fairly traceable is what we have here. That goes back to the geographic vicinity. What is fairly traceable? The two line up together, geographic vicinity and fairly traceable. These buses are idling all the time. Our members are commuting from stops where Academy idles the buses. They'd avoid the pollution, but some of these people can't because this is their commuter stop. This is the exact type of case that Congress contemplated when it wrote the citizen-suit provision of the Clean Air Act to enable local citizens to stop illegal pollution from polluters large and polluters medium-sized. If you have people who are actually commuting from these stops, then why are you talking about someone who is 0.75 miles away? Simply because there are so many stops in this case, Your Honor, and we wanted to ensure that this court recognized that geographic vicinity spans miles, but we're putting belt and suspenders on our case here so that we had enough people to demonstrate the extent of the pollution caused by this one defendant. What about the second batch of 10 declarations? You suggest in the brief that those were allowed into the record. Is that the case? I thought the record shows that they were appended to a motion. A brief referred to them, a supplemental brief. The supplemental brief was allowed, but it was a motion to strike reference to them as all late provided, and that motion was apparently never formally ruled on. That's right, Your Honor. So what's your position? Are they in or out? For this decision today, we don't need the second 10 witnesses. I do want to mention – oh, it seems I'm out of time. Are there any more questions? You can finish your thought. Okay. I just wanted to go back to the issue with the district court's decision, which is the reference to cases that are climate change related, greenhouse gas emissions cases, which require a much larger jump between the defendant's pollution and the plaintiff's injury. There is climate change related causes and individual. We've got that point. Okay, great. Mayor, on the recreational injury standing, can you, as quickly as possible, tell me how that basis survives transunion, or put another way, can you put it in the transunion framework for me? Sure. Transunion states that a concrete injury is discernible and identifiable. So that's where we start. They also mention that there are tangible and intangible injuries. Tangible is usually a physical injury or a monetary harm. Intangible, and I believe in that case it was unwanted texts that came in, text messages that came in, that created this intangible harm there. That's where we stand with recreational injury as well. It's an intangible harm in addition to that fear of breathing the pollution is an intangible harm that many of our individuals have experienced here. Thank you. Thank you. May it please the Court. My name is John Cowan. I represent the Defendant Appellee Academy Express LLC. We ask that the Court affirm the decision of Judge Young on summary judgment and find that the Court properly held that the plaintiff here, CLF Conservation Law Foundation, had not shown that any of its members had suffered either a concrete injury or a particularized injury that was fairly traceable to illegal bus idling by Academy's buses. Well, take just for example Mr. Cahill. I'm sorry, Your Honor. Mr. Cahill, C-A-H-I-L-L. Yes. It seems he alleges that he's right near the AOI stop repeatedly, that he has a route of biking that would take him right behind it, that he commutes from it, and that he doesn't take that route because of the pollutants. Why is that not enough to at least establish standing? Well, Your Honor, I think it's important to not just review the briefs for the summaries, but to actually look at what the affiance state and to compare that as well to the specific instances that have been alleged in the complaint of excessive idling. Sure. Well, that's what I thought I did. I thought I just told you what he said in his declaration. Yes, Your Honor. I just wanted to provide some context. So Mr. Cahill, he's claiming that he's impacted by buses at the Cambridge GO bus stop, which is the ALWIFE station. If we look at the allegations of the complaint concerning the ALWIFE station, all that's alleged here is that Academy's buses violated the idling Massachusetts implementation plan on two days, two separate days, November 27, 2019, and two months later, January 31, 2020. So this idea that, yes, a person who was exposed to that idling within a reasonable period of time and within a reasonable distance could allege harm, but that's not what's going on here. None of the affiance have actually tied any alleged injury to events of idling by Academy's buses. And so there's a real disconnect between the allegation of a harm and the assertion that buses are idling all the time.  We have those two specific instances related to the ALWIFE stop. And Mr. Cahill has not said anything about when he presumably stopped biking or felt that he wanted to spend less time outdoors. It's not enough to simply say, I don't like the fact that Academy is idling its buses, and therefore I'm not going to go biking on a trail by the ALWIFE station. There's got to be some connection. There's got to be some tying of that injury. That's what he said in court. Did he say, I'm going to continue doing it every day and go through the pollution and that would be enough? Well, as I think you suggested earlier, Judge Gelby, if there were, in fact, an instance where a person is regularly commuting from that station and is regularly exposed to that exhaust and feels an actual harm, whether it's difficulty breathing or inability to run in the area, that would be a concrete harm. But that's the kind of concreteness and the kind of particularization that is sorely lacking in the evidence that's been presented. So if he were to say, I want to go by their periodic, once or twice a week is my intention, I'm not going to go because of this, that wouldn't give him standing. Well, again, you've got to show that there is more than simply an averment that Academy idles at buses. There's only two occasions in this particular example. I would suggest to the Court that that's simply not enough to establish that. So you seem to be saying the plaintiffs had two possible alternatives. If they had alleged that as a common routine daily matter the bus idled, then it would be enough that they showed that at any time while it was idling, one of the plaintiffs was there. Or they could allege they know it was idling on March 7, but then they would need to show that someone was affected by that event on March 7. Yeah, I think that's essentially correct. In other words, there's got to be something that establishes a cause and effect here. It's not a standard tort causation, but there's got to be a plausible traceability in the Court's terminology between the event of illegal idling and some harm. And whether it's by way of a particular event or by way of a series of interactions over time, that connection has not been made in the record before the Court. Let me ask you again, and this is if you know, for purposes of standing for Clean Air Act, is it analogous to the Clean Water Act? So, yes and no, Your Honor. Air is different than water. It seems to me it's a much more stringent... No, you have to breathe it. You have to breathe it. Yeah, well, you do have to breathe it. But in a Clean Water Act context, you have a plant that's discharging pollutants into a river. Or you have someone who could be miles downstream who's seeing the direct impact of those pollutants. Here, I don't think you can make that same analogy to say that I'm two miles away from a bus that's idling in Cambridge and I happen to be in Boston or Newton. And we have to be realistic here. These are not in isolation. These events are not in isolation. You have... It's impossible, if not virtually impossible, I would suggest, to show that an idling bus in Cambridge is impacting a person who is biking in Braintree. That's just not plausible. But if the person is biking in Cambridge, he could be affected. Well, again, there's got to be some physical connection. Let me say this. From my experience, again, with Clean Water Act, I have a case that when you say it goes down the river, people are going to be affected, but there's also lakes. But there's people who say, for associational standing, we like going to different lakes. Like people who like to hike, some people like going to different lakes just to swim and say, if this lake is polluted, I'm not going to go to that one, but my intent is to go. And I've had cases where standing has been found. EPA eventually, just recalling the case I had, EPA joined the settlement, approved the settlement, and eventually there was never an issue about standing. So this wouldn't be analogous to somebody who recreationally wants to go by here or there, like at least the first four folks, the witnesses, the sister council mentioned. Yeah, so again, it really comes down to looking at the record here. The record here just doesn't show any connection between these alleged very vague harms. I have trouble breathing. I don't like pollution. I would go out more if there were less pollution. That's all fine. Wouldn't discovery be perhaps more properly for the case, if it's dismissed in your favor, at least it would be in the summary judgment context rather than the 1286 context? I'm sorry, so this is on if, for example, there were more discovery on these issues? Yeah, more discovery, yeah. Well, I don't think, you know, we're at the stage now where we have brought a motion for summary judgment. The burden is on CLF to show that, in fact, there is an arguable case for connecting these members' alleged harms with some specific instance of idling by Academy's buses. We've been discussing. And they haven't done that. We've been discussing traceability. The district court relied not just on traceability, but relied on basically saying these allegations, these complainants didn't point to injury, cognizable injury. It did seem that the standard for what it was calling injury was perhaps not in alignment with the case law. I think that's, yeah. Odors could not be enough? No, I think the court does acknowledge that in certain circumstances something less than physical harm is sufficient. But you still have to establish some harm. And, again, other than these vague allegations that I don't like breathing in polluted air without any connection to conduct by Academy bus, I understand that's the traceability. But the fact that the harm itself is I've been harmed because there's pollution in the air and I run less than I would otherwise. I'd prefer if the environment was like it is when I vacation in Maine or something like that. Those allegations are just too vague. What about that? No, you go ahead. Why isn't that? I mean, someone likes to go out and exercise and run and their route takes them past a place where a bus is idling and you breathe in noxious fumes. Why isn't that? And so, therefore, you don't take your preferred route anymore. Yeah, the only one that comes close to that, Your Honor, is the one that Judge Young focused on. It was Mr. Wagner. And as the court noted, he did testify that he would run more if Academy's buses stopped idling. The problem there is, A, there's no connection. Again, there's only two days of idling that have been alleged. But that's a separate issue. And also, he's two miles away at closest to either the Cambridge Station or the Wellington Station, which are the two stations that are closest to where he is out running and would run more. That two-mile radius in the context of an urban environment is simply just not viable. Right. But suppose his preferred route was to run right by the station and he, therefore, didn't take that preferred route. Are you saying that would not be a cognizable injury? That's a hypothetical that's not in the record. But, again, if he could show that he has that. Well, it's pretty close to the record. That comes close to what Cahill is saying. Well, it does and it doesn't, Your Honor. I don't think that it's enough to say I – Well, is it your position that if that is what he's saying, that that's not injury? I don't think that's what he says, first of all. But assuming that he does, then, again, you've got to show that there is some connection between that injury and – so that goes to the traceability – but that there is some connection between that harm that he's alleging and some conduct on behalf of Academy Bus. Right. He doesn't take his preferred route because the Academy Bus is spewing fumes into the air as it idles. That's a very different circumstance than what's presented here. He has not identified anything coming from Academy Bus. What he said is, I understand all of these witnesses. None of them have a direct personal knowledge of what happened. So the plaintiff is relying on the allegations of the complaint and investigation done by parties who were not members of CLF to pinpoint those events. One of the harms that is alleged is sort of this forward-looking fear of imminent health concerns connected to air pollution. I take it that the district court bounced that one on the grounds that individual plaintiffs needed to establish an existing health condition and tie it to that as opposed to not doing that. Why wasn't that error? I thought our cases did not require that kind of connection. Yeah, no, I understand the point, Judge. I think whether or not Judge Young phrased it in those terms, whether he phrased it correctly, what I come back to is the fact that there has got to be some tangible harm here. What the standing witnesses here have asserted is I am concerned that at some point in the future, by being exposed to air pollution, I might suffer asthma or I might suffer COPD. I think anyone who lives in Boston might express that same concern, unless they've also been able to say, look, as Judge Cunata was theorizing, I've run by that bus station. I commute from that bus station on a regular basis. I have some harm that I fear in the future is going to lead to future harm. Can I ask you just one question about that? Hasn't it been legislatively determined with respect to these bus stops that that connection does exist? Isn't that the reason why they have the rule? Legislatively determined? The Clean Air Act, the state implementation plan? I thought the rule was you can't idle for more than a specified period of time. Right, so there are different rules in Massachusetts, Connecticut and Massachusetts. There's a five-minute sort of cutoff after five minutes. You can only idle for certain reasons. So my question is, what else do you need to approve once you have this legislative determination? Are you saying that those legislative determinations were not connected to health concerns? No, I think they probably were promulgated for those reasons, to reduce air pollution, and they were approved by the EPA. Right, so certainly, yes. That is the concern that I think is being addressed by the state implementation plans. Again, what needs to happen is there needs to be a violation of them. And then that violation then needs to impact an individual. And there has to be a... Yes, so I thought the allegation was that the impact with respect to forward-looking health concerns is that it's going to affect the health, but that I have this concern about it affecting my health. And I have to go back to the point. It seems like the judge said, well, you have to show that you have some sort of specific condition in order to make that claim. Is that wrong? I still don't see what's missing here. Yes, so I guess what I would say, Your Honor, is the judge may have been referring to cases where there was that established connection. I would say that there has to be some ability to show that there is a likelihood of future harm, and that has not been made here. All it is, is my grandfather had COPD. My son may have asthma. I used to have asthma as a kid. I'm concerned that some point in the future I might develop asthma. So I just want to make sure I understand one point. I think the notion of the complaint in this lawsuit that your analysis seems to rest on is this is a claim for a violation of the Clean Air Act requirements on such and such a date at such and such a place, and at such and such other place on such and such other date. So that's the claim, as opposed to this is an action under the Clean Water Act for generally idling too long. You would say this is the former, not the latter. Yes, I think that's right. This argument that seems to be illustrated throughout CLF's brief is this idling is going on. It requires an inference that the trial court did not make, nor that this court, I think, can properly make, that there is a pattern or practice that's an evidentiary inference that simply is just not justified, that was never briefed, and has never been part of the argument here. Thank you. Thank you, Your Honors. Ms. Governor, could you pick up with that point? I'm guessing you probably plan on doing it anyhow, but it would be helpful to us. In other words, the allegation is that this is an action for violation of the Act on such and such a date, such and such a place and time, and you need to connect that violation with a plaintiff's injury in some manner. No, Your Honor. You do not need to link up violations to an exact date of an injury at an exact time and an exact place. That's direct causal linking, which we do not need here. The contribution to the air pollution is enough. The court, and I just want to give an example here of Well, is this a lawsuit for a violation on such and such a date and such and such a day as to Academy? The violations that were investigated and we were tracking happened on certain days. There was no ability for us to be out there hours on end every single day. So what CLF did is we demonstrated a pattern in practice of this type of violation. We demonstrated a pattern in practice of idling, this illegal idling, excessive idling going on at all these defendants' bus slots on various days so that no one could say it's just one bad apple who happens to be idling their bus and we dealt with that person. Okay. So if I'm understanding, if we looked at your complaint with this in mind, we'll find that as to Academy, you're alleging a pattern in practice of idling of which you've given a couple of examples. You're not bringing a suit for those examples per se. Exactly. So what you'll see in the complaint is a full chart. There's 147 violations listed in that chart, which is quite a considerable amount. I think that was over around 20-something days. All by Academy? Yes, that's correct. And immediately after those charts, there's an explanation that it's likely that additional violations were occurring on other days and those would be included in the claims in this case. The important thing to note, and I'm glad this was brought up, that this regulation against excessive idling was created to protect public health, both in Massachusetts and Connecticut. It was then made federally enforceable by EPA. And again, these are the individuals who that regulation was designed to protect. There's also a point that's been made. Wait, what do you mean? What do you mean, these individuals? The members in this case. There are a lot of differences. Is it the bike rider, the person who lives three-quarters of a mile away, the person who's got a condition? Sure, it's all of them. And again, we look to the case law regarding how close individuals should be in order to meet the standing requirements here. But that's everyone. The act is intended to protect everyone who breathes, which includes most of us, right? That is correct, yes. Do we all have standing? Not necessarily. You would have to be a person who comes to court who can allege that they have some sort of injury from diesel exhaust, vehicle pollution. They've experienced that before. And that's what these people have. They know what it feels like. They've been close to these areas and in this vicinity where they don't want to be breathing this pollution. So any one of us, I suppose, could walk past one of these bus lots and then we would have standing. In other words, what's wrong with the judge saying you need to show some real connection to you, such as you've got a preexisting condition? Because that just takes it entirely too far. What needs to happen is the person has to come forward. They have to have experienced that air pollution injury. They have to show that they're in the geographic area. And in this case, we've got many people who are there on a regular basis. They have to then prove that there are violations of the idling limit. So this idea that it's possible that everyone's going to come in and sue, no one's really coming to these courts to sue. These cases, this is the first of its impression on this side of the country. In the Tenth Circuit, they were able to deal with a mobile pollution case. On the forward-looking concern basis for claiming injury, even under those circumstances, I take it the brain tree stop doesn't fit under that one, right? I thought there was a problem with brain tree. The only issue with the brain tree stop is that we have an individual who became a member post-amended complaint is the only issue there. But I'll just make one more point regarding the fact that anyone could come to court to bring these cases. Again, these are few and far between. Clean Air Act cases brought by citizen plaintiffs against large companies or even small companies, they happen around less than 10 times a year across the country, nationwide. There are hurdles to get through. The Clean Air Act and the citizen suit provision has many barriers, including you have to not be bringing a case where the state or the federal government has initiated a lawsuit. You have to have a 60-day notice period so that the company understands what you're suing and the allegations that you're alleging. You need to be able to come into court and demonstrate your standing via declarations, via testimony. It's very difficult to get individuals to come into court, which is why we had some individuals coming in later and later after the amended complaint, because they did want to demonstrate that they had some injury from the same pollution. Any more questions for counsel? Thank you.